May it please the court. My name is John Vermitsky. I'm an attorney from Forsyth County, North Carolina, and I'm happy to represent the petitioner in this matter, Mr. Christopher Maney. This incident arises out of a horrible set of injuries that my client sustained as a result of an altercation with a police canine. Despite the fact that my client at no point committed any crime or was charged with any crime, I'm happy to represent the petitioner in this matter, Mr. Christopher Maney. I'm going to focus on three factors in the decision below that are most important to the articulation on appeal. The first being the error that we argue the court committed in excluding certain elements of the plaintiff's affidavit for alleged lack of personal knowledge. The second, and probably bulk of my time, which I intend to spend on the qualified immunity analysis and the question of whether or not the circumstance here met a clearly defined constitutional right based on preexisting authority. And then finally, with the remainder of my time, I intend to address in a somewhat shorter manner the battery question. I'd like to first focus on the portions of the affidavit that were excluded. Your Honors, the court below excluded a number of different statements on the alleged lack of personal knowledge, but the one I want to focus on the most first is the repeated statements by my client in his affidavit that he knew the officer could see him at the time the dog lunged the four feet from him and bit the top of his head. Your Honor, with the facts most favorable to the non-moving party being the plaintiff, these are the facts. Mr. Maney testified that the officer was no more than five feet from him. In fact, he testified it was closer to three to four feet. That there were no leaves or foliage or anything obstructing the view. And the district, but what the district court left in didn't strike from the affidavit. We could, the court could still infer from what was left in that the officer could see Mr. Maney because the district court didn't strike that the bush was devoid of leaves, or that the area was illuminated by a streetlight, that the appellee himself testified that he scanned the area adjacent to the stairs with his gun light, and eventually the appellee himself admitted, at least at some point, that he could see that this wasn't the suspect. I completely agree, Your Honor. You don't need, you don't necessarily need. And I do agree with that, Your Honor, and my only concern is I do agree there's sufficient evidence to support the appellant's position regardless. My concern is it should not be permissible to strike from an affidavit a statement when an individual is four feet away making eye contact, that that's not within the realm of personal knowledge. Well, I think that the testimony was that he could see that he could see him. He recognized him. The canine lunged three and a half feet. I suppose you're correct, Your Honor, that would have to be an inference from the facts. But again, that would be a question of fact for the jury, not improperly sent. You're saying he could see him before the lunge or after the lunge? My client would testify that he was visible the entire time. Now, there is some dispute based on the officer's statement as to whether he could see him. But remember, the officer's statement is completely different as to whether he jumped in the bushes. My simple argument is viewed in the light most favorable to my client. Those inferences should be taken as true as to his statements. But, Your Honor, I don't intend to overburden this Court with this portion of the argument. I think the most important argument clearly here is the second portion, which the Court found dispositive, which is the qualified immunity analysis in this case. Your Honor, the standard the district court puts on a qualified immunity analysis in this case is virtually impossible for a plaintiff to meet. And, Your Honor, what the Court specifically stated was the jury in the Coffey wing case, the jury may conclude that forcing to show hands while being bit could be excessive force, but didn't say definitively as a matter of law that that was excessive force. That would require, in order for qualified immunity to not apply, for a summary judgment to be affirmatively granted for the plaintiff and say as a matter of law, every time an officer asks someone to show his hands and allows a dog to continue biting the individual, it's excessive force. Well, clearly, Your Honor, that is not the intent of the qualified immunity analysis in our jurisprudence. And, Your Honor, there are two or three separate prongs by which this is a clearly established constitutional right. And the first I want to look at is the Coffey case. In that case, an individual who, in contrast to my client, was a suspect in a crime and had been fighting officers, was asked to show his hands while a police dog continued to bite him for a lengthy period of time. In denying the qualified immunity analysis, the Court articulated that it's unreasonable to assume that an individual who is defending himself from serious dog bites should be required to immediately comply with verbal orders and show hands in order to avoid further harm. Contrast that with this case when, after the initial bite at least, it is undisputed that the appellee officer knew my client could not have been the suspect in this or any crime. But does it matter where the person is being bitten? On the body? I don't know. I mean, what if he's biting you on your big toe? Now, I do understand, Your Honor, that in COPS there was some discussion of the bite being in the scrotum. In that area, it would obviously be more sensitive. But, Your Honor, if a canine is attacking an individual to the arm, to the hand, to the face, or in this case, a 15-and-a-hatch gash in the head and the arm and the leg. What was my question? Your question was whether it matters to the part of the body. And I think the answer is no. I don't think it matters. So if he's biting him on his big toe and the officer says, show me your hands. I think that that would articulate the case-by-case factual determinations a jury would have to determine. That's right. That's the purpose of my question. I agree. Case-by-case basis, depending perhaps as a factor where he's being bitten. I don't disagree that that would be important to a jury. But to the question of qualified immunity, I hesitate to draw the line by parts of the body and say unless you have a similar situation in the case law that had someone bitten a similar area, qualified immunity applies because it's not clearly established that the officer can't do that. Well, it sounds to me like you're wanting us to adopt a rule that any time a dog is biting a person, no matter where on the body it is, it would be unreasonable for the officer to request before he calls the dog off that the suspect show his hands. I think that the rule I'm actually asking you to articulate is that in an instance where there is no expressed concern of a reasonable articulal suspicion of a weapon or danger to the officer, yes, an officer should and is required to stop a dog from biting before asking to see the hands. And that is not a new determination, Your Honor. In COPS, that was the rule as well as the fact that in the Vatican case, the court ruled that the officer must give a warning before releasing a police dog. That was not limited to a certain circumstance when there were three people present or five people present or this type of situation. The court felt confident in being able to articulate a bright-line rule because it's a requirement of safety to avoid unnecessary extra harm. And, Your Honor, I'm not asking a broad rule that every time an officer would have to stop the dog and show the hands if, for example, there was an articulation over the radio that the person was armed or it matched the suspect description or the person is reaching for their pocket. But the fact is, Your Honor, not one of those facts is applicable here. And the secondary argument is the officers are never allowed to seize an individual beyond the scope necessary to determine why the original stop occurred. And, Your Honor, that is the U.S. v. Stephen Garrard case. Can I ask you a question related to that? And I feel like I'm having so much trouble with this case, so just spell it out to me. Why was the officer allowed to seize your client at all? Put someone inside the dog. But as you've just said, it's not the suspect. Even the suspect wasn't armed. There's no indication that the suspect has an accomplice. So what's, I mean, are you contesting that there could have been, when did the seizure occur and why was a seizure justified? The seizure occurred as soon as force was directed against my client intentionally. So there's some debate as to when. Yes, and there is some dispute as to whether the initial lunge or the following 10 seconds, which it sounds really cold in a transcript, but 10 seconds being bitten by a canine is a long time. So I would contend there was no justified means to seize them. Now, can they do an interrogatory stop to ask him who he is and why he's next to the stairs? A business seizure. Right. They could have stopped him. I think they could have stopped him without using force and using simple directions. So you think that it was justified to stop him and why? I'm not sure it would be, honestly, justifiable to stop him other than in terms of a wellness check. I struggle with any justification for stopping him. I don't mean to put the burden on you, but okay, so for purposes of your argument, we should go ahead and assume that a seizure was justified and the only question is whether this use of force was justified. Yeah, and I don't want to mislead the court. I am arguing that the entire seizure was unreasonable, and that is the articulation we're making. So I don't think there was a justification to stop him. And the seizure ends when they take off the handcuffs? Yes, Your Honor, and that's even more troubling, the fact that after the initial bite and the second bite and the third bite, after the 10 seconds, after they finally are able to determine not only that he's not the suspect but that he's unarmed, they still proceed to handcuff him with no articulation or explanation, walk him out to the street. 10 seconds is pretty fast-moving, and he didn't realize it wasn't the suspect for the entire 10 seconds, right? I would a little bit contest that, Your Honor. I would contest that. I believe the officer's statement was, as soon as I was able to see him, which he says was immediately upon the dog making contact, that I was able to articulate that this was not the suspect. The moment he saw him, it was an African-American gentleman reported versus a Caucasian individual. So we know that even if you give the officer three or four seconds, which is a long time, to not see him, six seconds, although it sounds like a very quick-evolving situation, is a very long time for a dog to continue biting an individual. And then the prolonged period of handcuffing while the individual is bleeding with the continued injuries. But the other problem I have here, Your Honor, is that it is clear under the case law that, for example, if this was just a car stop and you determine the person has a correct identification and that's what you're stopping them for, you cannot detain the individual beyond the period necessary to do that, to wait for a canine or someone else to come and search the car for drugs or other weapons. That would be clearly violative of the Fourth Amendment. In this case, any seizure after he recognized it was not his suspect is unlawful. And then to include force with that is further unlawful. Additionally, Your Honor, in the determination the court makes as to why there was excessive force, a lot of these concerns are addressed and articulated. And I would caution and ask this court to look at the Owens v. Baltimore City State Attorney's Office because it kind of addresses the district court's argument here that the fact that a jury could find excessive force doesn't mean it's excessive force as a matter of law. In that case, this court clearly said it's not an established right only if it's never would occur because many cases settle and those that don't are tried to jury and a jury's determination does not set what the legal precedent is. It sets the determination of a set of facts as applied to those rules. So the district court had to really move mountains to clarify this case from the Copp case because, frankly, it's similar and where it's dissimilar, every bit of it as articulated by the district court is in favor of the plaintiff. All of the different facts are better here. In that case, the suspect was fighting. In that case, the suspect was the suspect. In that case, they never knew he wasn't the person who articulated the crime or who allegedly committed the crime. So that is the elements or the issues that I have with it. And, in fact, as far back as 1995, if the officer recognized at some point that he wasn't the suspect, he has to give either a warning or a means for Mr. to stop. It is unreasonable, objectively, by Copp and Vatican to expect someone who is being bit on the head, the arm, and the leg for 10 seconds to comply with an order to show his hands while he is attempting to defend a dog. Now, despite that, there's no evidence that he hit the dog or attacked the officer or went for a weapon. There's no means for him to comply except to go like this as a dog continues to maul him. And that simply can't be the law that an officer knows that that's okay. And the fact that there's not, I don't know how there could be a closer case than Copp for Vatican without having an identical set of facts. And what I would caution this court or ask this court not to do is not to increase the bar for qualified immunity so high that the only way it doesn't apply is if your exact set of facts has happened before because that is not the purpose of the qualified immunity analysis. That's not the purpose of the protection. Now, Your Honor, briefly, or Your Honors, briefly, the question of battery was also submitted to the court, and there's some dispute about the nature of battery as an intentional tort. There's no question in North Carolina law, the Linvey-Burnett case is very clear, that the intent required as an intentional tort of battery, which can permit punitive damages, which requires an intentional action, is simply an offensive and willful touching. There's no question that beyond the point of the initial bite at least, if not The question of whether allowing the canine to remain biting him for seven or eight seconds or however long it is the jury determines after the initial contact could be found to be a question of wantonness. Wantonness in North Carolina is a reckless disregard of the right or safety of others. A jury should be permitted to conclude or not conclude whether or not that extensive amount of time, both allowing him to be bit and then allowing him and handcuffing him affirmatively for several minutes constitutes wanton conduct, which would make the public official immunity claim, which they claim barred battery, improper. In fact, a very similar result was found in a companion case that I handled involving Mr. Smith that was in the record as subsequently decided authority, the order of Judge Eagles, within the record itself. And she concluded the exact same thing, that battery was not barred on public official immunity because of the fact that it is an intentional tort and it could be found that there is some wanton or intentional conduct. Those are determinations for the jury. It's improper for the court to determine the state of mind as a matter of law. Your Honor, I'm very close to my time for my initial speech, but if you have any questions, I'd be glad to answer. Thank you, Your Honors. Mr. Kaye. May it please the Court. My name is Patrick Kane, and I represent Apolli Officer Terrence Garrison with the City of High Point Police Department. And, Your Honors, I'd like to begin with one fact that is not disputed anywhere in this case, and that is that at all times relevant to this incident, the dog was on a leash. Why does that matter? It matters because of what this court said in 2010 in Melgar v. Green. And I will read to you what this court said. There is a vast difference between an officer releasing a dog off a leash, knowing with a good degree of certainty that it will find and bite its target, and an officer exercising substantial control over a leashed animal with the expectation of being able to prevent any injury. And this is the important part with respect to qualified immunity. This court stated, cases addressing the former, where the dog has been deployed, simply do not provide sufficient guidance to officers in the latter situation where the dog is on a leash. And that, Melgar v. Green. Wasn't the dog deployed here for all? Maybe I'm misunderstanding. The dog was deployed when the officer said in his own testimony, I knew it wasn't my suspect, I knew the dog was attacking him, and I made a decision not to pull the dog off. That doesn't count as sort of a deployment. I mean, he may be on a leash, but he is deployed and attacking the guy, and the officer says, I made a decision. I'm not pulling him back until I see the hands. As this court noted in Melgar, there's a substantially significant difference between deployment, which is a term of art in the canine world, where you release the dog off its leash and you therefore have no control. But I guess from the perspective of the person being bitten by the dog, who cares if the dog is on a leash or not? I mean, I understand that had he been off the leash, he might have ripped his throat out. That's what you're trying to say. And at least he didn't rip his throat out here, so it's different. But why, from the perspective of, I mean, I can't even articulate the question. I guess I'm just not getting it. From the perspective of the person, the officer makes a knowing and conscious decision to let the dog attack someone, and our precedent about use of dogs doesn't matter? The qualified immunity is looked at from the perspective of a reasonable officer on the scene. I understand what Your Honor is saying about when a dog is biting an individual, does it matter to that individual that the dog is or is not on a leash? No, probably not, although in Melgar, the plaintiff did make an argument that the fact that the handler tried to pull the dog back immediately caused more injury and was not the appropriate way to handle the situation. My point simply is, Your Honor, that from a qualified immunity perspective, this is the only case, Melgar is the only case that discusses an instance where there is a seizure without an actual deployment or releasing of the dog. In fact, it seems here like the dog surprised the officer as much as Mr. Maney when the dog lunged off the porch, and it does seem like a pretty fast-moving, tense situation for an officer to reasonably be expected to act. Absolutely, Your Honor, and I believe that the district court could have found, based on the undisputed facts, that this was reasonable as a matter of law. And I'd like to distinguish very importantly something that makes this case exponentially different than Koff and why Koff is not applicable here. Well, this court in Koff did not say it was unreasonable. It said a jury could find that it was unreasonable to ask a suspect who is being bitten in the scrotum by a canine to show his hands before releasing the canine. In that case, there was never actually an issue as to whether that individual that was being seized was armed. In fact, the facts of that case show precisely the opposite, that when the officers came onto the scene, they knew that that individual was not armed. They sent the dog in anyway, and there was never any instruction to show your hands. The reference to showing hands that this court made was a figure of speech with respect to a jury could find that it's unreasonable to expect him to show his hands and calmly surrender while this is happening. This case is entirely different because Let me ask you this. Assuming the dog lunges unbeknownst to the officer, he doesn't know why, he grabs it and starts biting this guy. Some contestant at some point also realizes this is not the suspect because of skin color, but of course he doesn't know what the situation is. He doesn't know who it is that's hiding there at night. But the dog bites the guy on the arm. Is it reasonable to say to that person, show me your hands while the dog's hanging on his arm? I suppose if the dog is on one arm, it would be reasonable to say, show me your other arm. And then the next bite's on the thigh. It would seem to me everybody being bitten by a dog on the thigh is going to be using their hands to try to get the dog off of them. And so my question is, is it reasonable while a dog is biting you on the thigh to expect a person to show their hands? It is reasonable under the circumstances that confronted Officer Garrison in this case. Can you explain to me, because there's no gun anywhere in this picture, right? It's an unarmed robbery. There's no report that he has an accomplice. This isn't the guy anyway. He's allowed to just sort of set a dog on anyone he runs into to see if he might be dangerous? I don't understand where the reasonable suspicion is that this guy is armed. There's no indication that he set the dog on him. But it seems to me it sort of follows from your argument that he's entitled to use a dog until he can be assured of the fact that anyone he encounters in the vicinity of where the dog took him is not armed? Yes, Your Honor, because of the factual certainty. So if I had been standing on the other side of the house and I saw the dog coming and I didn't want to make any sudden movements, so I'm just going to stand very quietly, that dog can jump on me until the officer knows I don't have a gun? Even though the officer knows you're not the suspect? Yes, and there's no gun anyway. Even the suspect doesn't have a gun. Keep in mind that it's dark. The officer testified that he had no idea that the individual was there. I'm just trying to figure out the breadth of your position, which seems to be that if an officer, there's no gun in the picture, there's no accomplice in the picture, there's no reason to think there's anything scary about this particular house. I mean, it's not like he's executing a warrant at kind of a drug hub where you just assume anyone in the vicinity is probably up to no good. There's no gun, there's no accomplice, there's no reason to think this person has a gun, and nevertheless he's allowed to use a dog until he can be assured this person is unarmed. That's your position. I think the position is slightly different, Your Honor, that once the dog unintentionally seized the individual. So you're not saying if he had, so this is actually really important to me, so your position is not that if he had known it wasn't the suspect, he could have then allowed the dog to, if he had first known it wasn't the suspect, then at least he would have had to say first, show me your hands before he used the dog? I think that if he had known it wasn't the suspect and had been, I think the canine manual would say that if there's somebody in the vicinity, you are to give them the opportunity to. What do you think the Constitution says? I believe that the Constitution would likely say that it was not,  I would agree with you, Your Honor, that if he was walking up and then sicced the dog on this individual who he knew affirmatively was not the suspect. But you think the decision not to pull him off is different? Yes, and I'll go back. Why is that? Because it was an unintentional seizure. I'm giving you that, but so he testifies, but I decided I'm not pulling him back until I see the hands, and so why is that different from the decision about whether to use the dog in the first place? Because once the dog has seized the individual that the officer had no idea was there, he has a responsibility to himself and his surrounding officers to ensure his safety. But he didn't have that responsibility before. I don't understand why it's different. If you're conceding that the officer could not, knowing he's not the suspect, he could not have allowed the dog to attack then, but knowing he's not the suspect, he doesn't have to stop the dog from attacking, I don't understand why those are two different inquiries, allowing the attack and stopping the attack. Because in the first instance, Your Honor, the officer knows that the individual is there. In the second instance, which is the case we have here, it was a sudden, unexpected seizure of an individual hiding in the bushes at a location where they had tracked a robbery suspect, and he took a minimal amount of time to ensure the safety of his fellow officers in an unexpected, rapidly evolving, tense situation. We have all this case law saying we parse this stuff to the second, cases like Waterman, like force that might have been justified for the first two seconds. Once it's not justified anymore, it has to stop. We don't give you sort of forward momentum in our case law. We've said this over and over again. We will parse this stuff down to the second. So I'm still not hearing, and I'm genuinely mystified, whether the standard would be if we can agree that once he knows he's the suspect, he could not start a dog attack. I don't understand why it doesn't follow that once he knows he's the suspect, he doesn't have to stop the dog attack. I think because the nature of the situation would be entirely different had he come onto the scene and seen an individual who he knew was not the suspect. Keep in mind, Your Honor, that Officer Garrison was as surprised as anyone. He was the most surprised, in fact, that the dog went into the bushes. He then had to make a judgment call in a split second as to what he was going to do with respect to this unexpected bystander. And his testimony is, and he did make that decision, and his decision was, until I see his hands, I'm not pulling the dog off. And I don't... That's all. So he made that decision. He did, and I do not believe there is any clearly established law that says that his decision to do that was violative of a constitutional right. Can I ask a question? Can you just, the same question I asked your colleague, if you can just back this up for me a little bit. So your view would be that the seizure, putting to one side the use of force, just talking about the seizure at all, the seizure started when he intentionally, when do you think the seizure started in this case? I think that's an open question, Your Honor. I'm not entirely sure if there even was a seizure. I think there is case law that suggests, and that is the Hanson v. St. Paul case, the Dennis v. Town of Luden case, even Melger itself, Carruthers v. Honeycutt from the Western District of North Carolina that followed Melger. I think it's unclear as to when a canine unintentionally bites an individual, whether it be the target or not, if a seizure occurs. And so I think that if there was a seizure, the seizure begins to occur in this instance only after the officer sees that the individual in the bushes is not the suspect. Okay, and then why at that point is a seizure justified at all? Just so I know what kind of doctrinal box I'm putting this case in. So at that point he's entitled to seize Maney, why? I'm not sure he's entitled to seize him, per se. He needs to remove the instrument of the seizure, which he does after ensuring his safety. But why is he entitled to seize Maney to ensure his safety? Is this a Terry analysis I should be doing because he had reasonable suspicion that he was armed? He had reasonable suspicion that there were suspicious circumstances because you do not expect when you are tracking a suspect to an abandoned location in the middle of the night that suddenly there is going to be somebody else hiding in the bushes at that location that you are completely unaware of. So I understand that he would have reasonably been surprised and maybe even concerned for his safety, but you have to have more than that to conduct a seizure or even just a regular frisk, right? I believe he had enough suspicion based on the location of the suspect, or not the suspect, I apologize because he was not the suspect, the location of the plaintiff hiding in the bushes at the abandoned residence to where the officers had tracked the actual suspect. And as Officer Garrison testified, the reason he acted the way he did, Your Honor, is because it is not normal bystander behavior to be hiding in the bushes at a location where you have tracked a suspect of a crime. Before you run out of time, why was he then handcuffed after he was injured? Why is that reasonable? I honestly can't speak to that, Your Honor. The officer who handcuffed him is not the defendant in this case, and that's Officer Riley Edwards. That's in the record. His affidavit says clearly that he's the one who handcuffed him. I think all of the officers on the scene testified that it was a very, as is the sort of seminal language from these cases, it was a tense, rapidly evolving nighttime event. I don't know why he was handcuffed. I can't answer that question. I suppose only Officer Edwards, who actually handcuffed him, could answer the question. That doesn't appear to be what the excessive force claim that's at issue before this court and that was at issue before the district court is about. In fact, I have not heard until today plaintiff's counsel argue that that was somehow part of the excessive force. So what we are focused on, I believe, and what the district court was focused on, is in fact the dog and the dog biting the plaintiff. Can I ask one just very quick factual question? The facts in this case are so confusing to me. I have a question, and I don't understand the dogs and the scenting part. Yes, Your Honor. I want to talk about the scenting part for a minute. So what happened here? Did the dog pick up the scent but went to the wrong place? Officer Garrison believes that the suspect was actually at the location hiding. He testified that he believed that he was hiding under the porch. But he wasn't, right? We don't know that. In the ensuing chaos after Mr. Maney was bitten and Officer Garrison's first priority at that point was to make sure Mr. Maney got medical treatment, and he testified as such. At some point when they later cleared the area, they were not able to find the suspect. So they think the suspect might have been there all along but got away while they were handcuffing Mr. Maney. Got away at some point during the commotion that was caused when Mr. Maney was bitten by the canine. Okay. That was my question. So, Your Honors, I come back to the idea of what qualified immunity is all about and whether it is clearly established that under these circumstances it was unreasonable for Officer Garrison to ask Mr. Maney to show his hands before physically removing the dog. And he doesn't remove the dog by pulling on the leash for the precise reason that was referenced in Melgar, which is if you pull the dog back, it might bite again. It might injure the individual more. And the bottom line, Your Honors, is that as the District Court correctly found, it is not clearly established. There is no law that clearly establishes that this was unreasonable. And in fact, the District Court itself, Judge Beatty said, in looking at this, I can't decide whether it is reasonable as a matter of law that he asked him to show his hands before he removed the dog. And there's no case that says it is unreasonable as a matter of law. And in fact, even COFF, which counsel contends is precisely on point, I contend Melgar says it's not precisely on point. In fact, Melgar says that Vafikan and COFF do not inform what an officer's responsibilities are when the dog is still on the lead as opposed to having been deployed. But the bottom line is there is no constitutional guidance that is clearly established that would inform Officer Garrison that his actions on that night confronted with those circumstances violated clearly established law. Unless his behavior is so patently unreasonable that general principles of law dealing with force used during an arrest would have put him on notice that he clearly could not do what he did. That's correct, Your Honor, but that is not the case here. And for those reasons, we would ask that this court affirm the District Court's grant of summary judgment. Thank you, Your Honors. Thank you, Mr. Cain. Mr. Bromitzky. Thank you very much, Your Honor. Your Honor, there's a couple points I'd like to address. And the first one is this question of deployment. And I want to make something clear in the facts. This was a 10-foot lead that the officer originally had the canine on. It's undisputed he shortened the lead to about three feet walking up the steps. Viewed in the light most favorable to my client, as Your Honor correctly stated, you could infer from the facts that he saw my client based on those facts so the surprise element itself is only if you read this in the light most favorable to the officer. The lead goes from three feet to five or six feet, which is a deployment. Letting go of the leash is no different from choosing not to pull the dog back. Would you say that again? The lead goes from three feet, where he's holding the dog next to him on the steps, to five feet or so when he lets the dog go to the bush area and bite Mr. Maney and doesn't retract it. In fact, he testified he could have. Initially he didn't let the dog go to the bush area. The dog lunged to the bush area. In the light most favorable to Mr. Maney, he did. Because Mr. Maney, according to the facts. What is that evidence based on? It's based on the fact that Mr. Maney testified before the dog struck him he could see me. And the dog was, before the dog struck him he could see Mr. Maney. And the dog went out. But, again, I don't want to belabor this point. But even if we choose to take the officer's versions of events and the dog is three or four feet further out, he testified he could have immediately stopped the dog by a command and recalled the dog. And what is fatal to him in terms of notice is if you look at page 282 of the joint appendix to the deposition testimony of the officer, I asked him, aren't you trained that if you see an individual who does not fit the suspect description, it's just a bystander individual in the street, aren't you trained to tell the dog to immediately let go? Answer, correct. In the officer's own words, he states that he was trained and knew that once he knew it wasn't a suspect, he was told to immediately make the dog let go. And then he said, I chose not to because I felt my safety was at risk. Well, that gets into my second point, Your Honors. If you analyze this under Terry, it would fail on every ground. There was no reasonable articulable suspicion that a weapon was on the premise of even the suspect, much less an individual who is not the suspect. Read according to the defendant's position or the police position, any individual who sees police coming in a dark area with flashlights, with guns, with dogs, and doesn't know what is happening is permitted to be seized violently and searched for a weapon if they crouch and hide rather than announcing themselves. Mr. Maney stated the reason he didn't announce himself is he was afraid of either being shot because of suddenly surprising the officers or having the dog released towards him. So he's between a rock and a hard place. If Mr. Maney had revealed himself, they would be arguing, well, suddenly they were surprised, they saw an individual, couldn't immediately recognize it wasn't a suspect, so they were justified in deploying the canine. If he stays where he is and stays quiet and doesn't cause trouble because he doesn't know if there's anyone else nearby that they're chasing, then he's also entitled to be seized. That would mean that the officer's safety is made paramount to the constitutional rights of an individual to be free from a lawful search and seizure, and that is not the law. Every officer doesn't have the right to violently search an individual because there was some crime and he's around the area where the crime occurred. That is simply not enough. Additionally, Your Honor, the element or the question of surprise goes away in the light of a 10-second seizure. Let's say it's four seconds instead of the one or two. That's one, two, three, four, five, six. That's a long time to be bit by a canine. And try and show your hands. Now, Judge Traxler correctly stated, yes, you got bit in the arm. It's hard to show your hands when you're bit in the arm. When you're bit in the leg, of course you're going to react. Please don't forget that the initial bite caused a 15-and-a-half-centimeter gash that was removed from his scalp that was bleeding on the top of his head before he's reacted to the second and third. It is much more objectively unreasonable to require that person, who you know is not the suspect, to show their hands when there's not even a justification to seize him. And the fact that, as Judge Traxler said, the general principles of our criminal law state you cannot use more force than is necessary to effectuate a seizure under the circumstances. There is no question that the only way the government could win any part of the seizure being lawful is the initial bite, and even then, only if you infer that the officer is correct and it was a lunge and that there was no ability to control. But that is simply not the facts here, and all we are asking for, Your Honors, is our day in court for a jury to decide the facts rather than this be taken from them by a determination that the officer's safety. And I appreciate your time. Thank you all very, very much. Thank you, Mr. Bermesky. I'll ask the clerk to adjourn court, and then we'll come down and recount. This honorable court stands adjourned until this afternoon. God save the United States and this honorable court.
judges: William B. Traxler, Jr., Stephanie D. Thacker, Pamela A. Harris